It has been said that substantial similarity is the vaguest standard in law today. Lots of things could be said to be substantially similar, to other things. Every country music song could be said to be substantially similar to every other country music song. Same chord progressions, same twang, same themes, boy loses girl, takes to drinking heavily. Or else it wouldn't sound like a country music song. Taylor Swift crossed over to pop. But she started off country. She did. You guys got stuff in this record I don't know anything about. Don't go there. Every piece of arabesque jewelry could be said to be substantially similar to every other piece of arabesque jewelry. That's the standard we have. Whether you agree or not with the vagueness or lack of vagueness, that's the standard we have. So is it your argument that accepting that that's our standard, it was misapplied in this case? Yes. The courts have to serve an important gatekeeping function because of the vagueness of the standard. Or else we end up in a situation where we're not promoting the purposes of the Copyright Act, where we're acting against those purposes. So let me ask you, what is your strongest case authority for the proposition that because the substantial similarity standard is vague, courts have an additional gatekeeping responsibility? What's your strongest case for that proposition? There are a number of cases cited in our brief, and I don't have them at the top of my head where there are summary judgments granted. And there are decisions made regularly by the courts that this case just doesn't measure up. Right. But you made a statement specifically that because the substantial similarity standard is so vague, courts have to be extra vigilant in their gatekeeping function. And that's a pretty startling statement that I wonder what case authority you have to support that. I make that based on the whole litany of cases where summary judgments are granted, where motions to dismiss are granted as a matter of law at the end of the case. And I think that's the theme that goes through it. Well, I've done that. I've granted summary judgment in these cases, but not because of a heightened sense of vigilance that I discerned from the case authority. Go ahead. If you have more to respond. I frankly felt like your argument was a little different. It seemed to me that the district court has to determine using the extrinsic test whether the jury should apply substantially similar standard or a more exacting virtually identical standard. Is that correct? We make that argument, and I believe that's correct. At that point, I said to myself, we make that by going to Mattel. If there are a few ways to express the idea contained in the material, then the standard is virtually identical. If there are numerous ways, then the standard is substantially similar. So then it came to me, are there thousands of ways to do what we have to do here, or is it a minimum amount of ways? So should the district court, rather than giving a substantially similar standard, should the district court have said, no, it's got to be virtually identical? So my question then to you is, why should it be virtually identical? I think that the Mattel case is the key, and in particular the red bouncing ball on white canvas. The one I looked at. So then we go to what are the elements we're looking at here, and I think that the inquiry has to then go with what Sophia and Chloe told us are the elements. And by told us, I mean told the Copyright Office, which is a public document, so it told the public. Well, what it told the public was, we don't necessarily have protectable elements. We have a protectable way of assembling them, as I understand it. Exactly. And then if that's the way, are we saying there are many ways to design this, or are there thousands of ways? And if you've only got a hen assemble and an idea of a Buddha, which have to be in a teardrop, if you will, shape, then I said to myself, why does this say there are thousands of ways? Why doesn't it say there are many ways? And why did the district court give the instruction the way they did? So I'm asking you, why is it just a few ways rather than a thousand ways? Well, there are three very specific elements that they say were combined, and those are the hen assemble for a kiss, the Buddha in the negative space, and a teardrop shape. Of the whole. So, yes. So I think that if we looked at any earring that would combine those three elements, you're very limited in how you could express it. Would it have to be a teardrop shape? Well, that's what they claimed in their copyright. But I mean, if someone were making an earring, would that person who was making the earring not have a choice except to make it in a teardrop shape? No. So that means there are other ways to make the Buddha earring without encompassing the teardrop shape, right? I don't think so. I mean, I think her question is very important because it was my understanding that there was a hen assemble and an idea of a Buddha, but it had to be in a teardrop shape. That's my understanding as well. Because they were not protectable as they were. They were just used in the general, but by putting them in this shape, it made them protectable. And what they said was sufficient, although minimal, amount of origin and creative sculptural authorship in the treatment and configuration. So my worry was, for this, you got to have the teardrop shape. I think that one would. I thought you said the opposite. That's what I thought you said the opposite just a minute ago. That's why I butted in. Because if you're saying that you can do it not in a teardrop shape, I think your case is a tough one. No, I... And I'm not in the jury. She is, but I don't know how to do that. I might have misunderstood the question, but to be similar, whether substantially similar or virtually identical to their earring, the Sophia and Chloe earring, one would have to use the teardrop shape. But that wasn't the question I was asking you. I was asking you if there is any way to make a Buddha-shaped earring without the teardrop. Because if there are many ways to do it, then it's substantial similarity. That's why I was asking the question. If you can... Okay. I don't think there are. And I'm looking at page two of my brief because it has the pictures. The fact that you did it that way doesn't mean that you have to do it that way. No, but the Buddha's in the negative space, and it's a sitting Buddha in there. I see the Buddha. Right. And that's the point. That's the point of Sophia and Chloe, that the Buddha design has been lifted from their design. Right? Right. That's what they say. Right. Why isn't that true? I don't see the Buddha in the Brighton design. Oh, I see. You don't see the Buddha. You think it's a teardrop without a Buddha. Yeah. The Buddha's head would be this narrow part up at the top. And really what they did, and if one reads Natalie Sherman's testimony, this is clear from it. There are four kiss shapes here, just like in all their other jewelry. There's the one at the bottom, there's a kiss shape at the side, a kiss shape on the other side, and an extended kiss shape at the head. So they used four brackets, or kiss shapes, and in those four brackets you can see the Buddha. When I look at... You make a little fatter Buddha, and then it disappears? Well, I don't see the Buddha in the one on the left, and there certainly aren't four brackets. So two of the elements, in my view, are missing. Well, it seems to me that in the Buddha kiss there are two brackets on each side, but in the Toledo statement there's a crescent moon between two dots. That's right. It seems to me that they share a teardrop shape, and I don't think anybody's challenging that. So what we're really talking about is, does it contain the idea of the Buddha? And in the Buddha kiss, the negative space in the earring creates the outline of the Buddha, and as I understand it, you're suggesting, and which I agreed with, under the Toledo statement there's no such outline. That's what I see when I look at it, although I suppose different minds and imaginations can vary, but I easily see the Buddha in their earring. Sophie and Chloe made an earring that really looks like, when you look in the negative space, a Buddha. So if the extrinsic test fails, then what? Then it's judgment for the defendant. Well, just a minute. Then at that point, if you go to the extrinsic test and you find what you have, isn't at that point the district court is supposed to give the instructions which are virtually identical? That's true, unless the district court exercises what I see running through these cases, which is a gatekeeping function, and says it's just not possible to meet the standard here. Well, but we don't have in front of us any motion for summary judgment, do we? But there is a motion for judgment. Okay, so there's a motion for judgment as a matter of law. Yes. What's my standard of review for that? In our view, it's a de novo standard of review. I understand you're saying it's de novo, but in general, when I do a motion as a matter of law, I'm reviewing the jury's verdict. And I'm trying to figure out if there's any evidence to sustain the verdict, right? Yes. But yet, when I give this, this is the thing that makes this case so hard for me. When I give this to the jury, I give it to them under an intrinsic test, which is not the extrinsic test. And I cannot overturn their intrinsic test determination. The only thing I can do is look again at extrinsic tests. And yet, I don't know whether they make an extrinsic test, so how do I overturn them? Well, I think that the extrinsic test is what this court looks at. And what it also looks at is whether, as a matter of law, under the facts as we know them, this design by Brighton could be said. Well, the problem that you got here is that you're arguing for a de novo review. In other words, you're arguing for a summary judgment review, and the evidence has already been given to the jury. So, if I'm doing a motion as a judgment of law, at that point, it seems to me I'm supposed to be determining whether there's any evidence to sustain what the jury did. But that's under an intrinsic test, because they were not, they are not making the extrinsic test. Yes, and the way I see it, the court still had, the district court had this gatekeeping function. Even after the jury had already received the evidence? And we made a renewed judgment for a matter of law. But at that point, you're only entitled to relief if the jury could only come to one conclusion. That's the conclusion opposite to that it reached. That's a pretty stringent standard to me. Under the extrinsic test, I think there is only one conclusion that could be reached. But what you're really suggesting to me is that on a motion as a judgment of law, I'm back to the extrinsic test, even though the jury has already made the determination on an intrinsic test. Do you have a good case for that? If you do, you've found one I don't have. Okay, I'm not able to cite one as I stand here. All right. But that's how I would see the scheme. I understand what you're saying. I'll reserve the rest of my time for rebuttal. Would you want to address the cross-appeal? Well, we'll wait. We'll wait. All right, thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Ken Fitzgerald for Sophia and Chloe. As Brighton opened its opening brief, in the Copyright Act, Congress sought to benefit the public by encouraging artists' creative expression. Natalie Sherman was such a creative artist, and her Buddhist kiss jewelry design was a creative expression. Well, just a minute. Let's look at what the Copyright Office said. The Copyright Office said the henna symbol for word kiss is not protectable. The idea of the Buddha is not protectable. The teardrop shape is not protectable. In fact, there wouldn't even have been a copyright if it hadn't been the way they were put together. Right? Right. So this sufficient though minimal, which is what the Copyright Office said, then comes back to hit us now. At this point, nobody worries about the teardrop shape. Everybody agrees that that's been met. But the extrinsic test, it worries to me about this because it seems to me that to pass the extrinsic test, the infringing work must contain all of the elements. So when this one isn't even protectable unless you've got the three elements in a given way, I'm trying to figure out how there is any infringement. Well, the combination of unprotectable elements can itself be original and protectable. Yes, when it's in a certain way. Right. And the Copyright Office said it's got to be the treatment and configuration. Right. And so therefore, back to the same question, when there are two unprotectable designs that are put together in a similar fashion, there is a copyright problem. But when there are two unprotectable designs that are not put together in a similar fashion, there is no infringement. Well, these two designs, well, first of all, Ms. Sherman's design is protectable. The Copyright Office made its commentary. It's only protectable if it's in the treatment and configuration she put it in. Right. And the District Court and the jury decided that Brighton's Toledo Statement earring was in that same configuration. Well, just a minute. Let's think about that. I don't see how the Toledo Statement combines all these elements. If you use the henna symbol in the Toledo Statement earring, it's not used in a similar manner to the Kiss earring. Well, I think if you look at the henna symbol... I mean, if you look at the Buddha Kiss, there are two brackets on each side. If you took a look at the Toledo Statement, it's a crescent moon between two dots. That's not dissimilar. And those are all arguments that were made to the jury. Those were all arguments that the jury considered. Well, I'm not worried about whether they were made to the jury. I'm worried about was the right instruction given to the jury. Because if you don't meet the extrinsic test, then at that point, you've got to prove more than substantial similarity. You've got to prove vertical or virtual identical standard. And my worry is that the use of the symbol in the Toledo Statement was not right. And not only that, the Toledo Statement doesn't contain the idea of the Buddha. Well, the jury thought that it did. Well, just a minute. The judge has to look at this. This is a decision the judge has to make. If I look at the Buddha kiss, there's a negative space. I look right at it. Negative space in the earring. In the Toledo Statement, there's no such outline. Well, I see it, and I believe Mr. Ross said different minds and imaginations can vary. So I think a reasonable court or jury could see that Buddha shape in that. Well, given what the Copyright Office said about how you're going to get the patent, it seems to me that I have to focus very carefully on the use of unprotectable stuff, that they're in a similar configuration in order to get past the extrinsic test. And, frankly, it seems to me if you don't get past the extrinsic test, there's no way that jury – well, I should send it back and see if that jury should say it's virtually identical. And I would not contend it's virtually identical. So the key question – If I don't think the district court gave the right jury instructions, you lose. I think you're right, and I don't think we lose, and here's why. As the court observed, as Your Honor observed, Mattel is the guiding case. Yes. Mattel instructs us on when virtual identity is the standard and when substantial similarity is the standard. Right. And the test is whether an idea can be expressed in many different ways. Yes. The idea of a bouncy red ball on a black canvas can only be expressed in a few ways, whereas the idea of a zombie movie can be expressed in many, many different ways. The idea of a teardrop-shaped earring can be expressed in a gazillion ways in the language of Mattel. I'm having a tough time understanding why. I ask him the same question. It seems to me there's thousands of ways to design an earring, but there are not a lot of ways to design a teardrop which is shaped with the shape of a Buddha and a henna symbol for the word kiss. Well, the idea, and this is how Brighton describes the idea in its brief. Brighton describes the idea here, that is unprotectable, as a teardrop-shaped earring, or alternately, elsewhere in its brief, Brighton describes the idea as a Moroccan-style teardrop-shaped earring. So that's the idea. And so the question is whether that idea can be expressed in many different ways, and clearly the answer is yes. You can have... It's not clear. It's not clear to me. I mean, I'm having a tough time understanding. The only way that I can get to this understanding is if I go back to what the district court was saying about this, and he was applying the extrinsic test, and I don't think he applied it right. But if we get past that, then there's no way I can say there's thousands of ways to put a Buddha shape and a henna symbol for the word kiss a thousand ways in a teardrop. That seems like the bouncing red ball. Well, I understand, and let me respond this way. Mattel teaches that you have to first focus on the idea. There's only... Because you can't copyright an idea. So we have to articulate what the idea behind this piece is. Not what elements are in it, but what the idea is. And the idea, again, is a teardrop-shaped earring or a Moroccan-style teardrop-shaped earring. And if you Google Moroccan-style teardrop-shaped earring on a Google image search, you're going to find thousands and thousands of wildly different expressions of that idea. Out of the teardrop itself? Absolutely. Different sizes, different widths, different textures, different angles. And using a henna symbol for the word kiss so that they can negatively show the shape of the Buddha? Well, you're not going to find a lot of different... In fact, I would submit that you're not going to find any other depiction of Buddha in the negative space. That itself was a unique, expressive way of conveying a teardrop-shaped earring or conveying... That was part of the argument as to why it was... There was an infringement because of that Buddha. Yes, that Buddha shape itself, I submit, is original. The idea or the expression of that Buddha in a teardrop-shaped earring is itself original and protectable. The district court obviously thought so. And I think it's also important to keep in mind that the jury was instructed that only the expressive, original elements of plaintiff's work were protectable. The jury was instructed that common shapes were not protectable. To tell me what the jury was instructed is helpful only if you can tell me why they can get away with substantially similar instead of virtually identical. Because there are innumerable ways to express the idea of a Moroccan-style teardrop-shaped earring. That is why. That is the idea behind this piece. That's how Brighton itself describes the idea behind this piece. That's how the idea was described in trial. So that being the idea, the question is whether there are many different ways to express that idea, many different expressive choices that can be made. And Sophie and Chloe made all of these expressive choices with the size of the piece, the width of the outline, the proportion between the bottom segment, the middle segment, and the top segment, the angles out of which the bracket on the bottom radiated, the angles between the interim brackets. And all of those were individual expressive choices. And the district court properly instructed the jury that in determining substantial similarity, it could not base a finding of infringement based on similarities between the unprotected stuff, between the common shape, between just the fact that both of them had brackets, for example. So I think the district court was correct in applying the extrinsic test first and in instructing the jury. And if the court looks at the instructions for the jury, I think the jury was, again, instructed not to consider similarities between the unprotected elements, which include shapes, ideas, and things like that. And I think Your Honor was. Let me move them to the attorney's fees. I got your argument. I got to see if I really agree with it. I got your argument. Let's move to the attorney's fees. If we move to the attorney's fees, attorney's fees are awarded to a prevailing party only as a matter of the court's discretion. Yes. In other words, even though there's a prevailing party, the court doesn't have to give them any attorney's fees. Correct. So here the court says the prevailing party seems like Sophia got or received a sizable jury award, and it seems like Brighton invalidated many copyrights related to the Kiss design, did not infringe on the Kiss bangle. As a result, we're going to take the Smith v. Jackson factors, and I'll look through those, and there's nobody getting fees. How is that an abuse? In several ways. First of all, the district court erred in applying the law in determining that there was no prevailing party. The test for – Well, just a minute. You agree Sophia got the sizable jury award. I know you'd agree with that. Sure. But you also have to agree Brighton invalidated many of the patents. Right. And what happened? And they were told they did not infringe on the Kiss bangle. Right, which they believed. And therefore, in determining whether to award attorneys, one can look at degree of success, one can look at frivolousness, one can look at motivation, objective unreasonableness, need to advance considerations of compensation deterrence, which the court did and said no. And now I'm on an abuse of discretion. Well, first you start with whether Sophia and Chloe was the prevailing party, and there's well-established United States Supreme Court law that tells us how you determine there was a prevailing party. A judgment will constitute relief for the purpose of determining a prevailing party. You tell me the case. That says all I look at is the final result. No, you start there though. Tell me the case that says that's where I am. I mean, I have a tough time seeing why the district court was not correct. Well, I'm going to address the discretionary factors, which you get to after you first determine who was the prevailing party. So for the purpose of deciding who the prevailing party is, look at Farrar v. Hobby, which is 113 Supreme Court 566. What the court there says is that in order to be the prevailing party, the plaintiff must secure some benefit that benefits him at the time of the judgment or settlement. And this is the important part. It must affect the behavior of the two parties to the litigation in a way that benefits him. Going into trial is exactly what you, your behavior has changed because now you don't have a copyright relating to the Kiss design, and you didn't infringe on the Kiss bangle. But at the time of trial, Brighton was selling those things. Brighton was selling those products. Brighton refused to recognize our copyrights. So Brighton's behavior toward us, which is what the United States Supreme Court says matters, Brighton's behavior toward Sophie and Chloe didn't change on those products. Because they prevailed. They did prevail in invalidating that copyright, but they had already decided that legal relationship to Sophie and Chloe for themselves. They had already decided that they weren't infringing, so they kept selling them. Yeah, but you sued them, and they ultimately prevailed and as a result retained the right to continue selling it. Right, but that's just it. They retained the right. Their behavior wasn't affected by the judgment as to those products. But yours was. No, because the case was over for us. And the district court, I think, erred in considering how our behavior toward other parties might be impacted. And that's not the test. The test is how the behavior of these two parties vis-à-vis each other is impacted by the judgment. There were five accused products. Let me ask you, suppose you just, the lawsuit just involved the claims that they won on, and they won and let's put aside the case involving the earring. Would they have been a prevailing party entitled to counsel fees? Depending on how the court applied the Fogarty discretionary factors, quite possibly. But the court has to go through each of those factors. So I thought you were arguing as a matter of law they could not be the prevailing party here in this case. Oh, no, I see what you're saying. I think that's right. I think if they had agreed to stop selling the products, they were bound up. No, let's assume that the only copyrights that were at issue in the case were the ones on which they prevailed. And there was no, we take the earring out of the case. Would they have been the prevailing party? The judgment in that case would not have altered their behavior toward Sophie and Chloe. So they would not have been the prevailing party even though you lost on every claim? Well, that would obviously be a tough result to swallow. Exactly. I agree with you. Yes, but I don't see how it changes just because you won on one of these. Well, there are a host of cases with prevailing party fee statutes like in the Copyright Act and in the Copyright Act where they say that if the plaintiff secures a judgment in his favor, even if it's nominal, they are the prevailing party. That's good law. But that doesn't end the inquiry. No one disputes that, but the defendant, we agreed that if this earring were not in the case, they would be a prevailing party because they had prevailed on all of the claims in which you sued them. It doesn't make any sense to me just because you won on one claim that they're not a prevailing party anymore. Well, we got a judgment in our favor. I understand that. And a finding of willful infringement in a case where they denied everything. They denied access. They denied that they looked at our products. They denied that our products had anything to do with theirs. They swore under oath. I don't know what that has to do with this particular issue. Well, because it's one of the most important factors, according to Kurt, saying the last United States Supreme Court on the award of attorney's fees under the Copyright Act, the objective reasonableness of the losing party's position. Well, you lost on 12. Twelve separate claims were found to be totally without merit. We lost on as to four out of the five Brighton products that were at issue. Okay. I concede that. Of course, I have to concede that. But here's the important point. Brighton's factual defense to this case was a lie. Brighton's factual defense to this case was based on false testimony. It was not objectively reasonable. This would have been a very different case if Brighton had said. In most jury trials, juries believe or disbelieve witnesses. And obviously, if they find in favor of one party, they may have disbelieved the witnesses. And I think the district court erred clearly in finding that Brighton's litigation position was objectively reasonable. Obviously, it was as to the invalidity of the Kiss copyrights. But its factual defense to the case was false. It was based on false testimony. It wasn't objectively reasonable. And I think that's where the district court abused its discretion. I think the district court also misapplied the law determining who the prevailing party is in the first instance. And the effect of that was to work an injustice against Sophie and Chloe. Can I ask you one question? I'm just curious. They say in the brief that Sophie and Chloe doesn't make much money from this, that the money that they make is for suing people for copyright infringement. I think it's on page 14 of their brief. That's their accusation, and it's not true. Sophie and Chloe was a viable family business. It employed Ms. Sherman. It employed her assistant. Barza still is. It is. It's an operating business. And these products were the heart of its life. And its business was devastated when Brighton released this line of knockoffs. Now, we respect the jury's conclusion that the quatrefoil copyrights were invalid. We're not appealing that. We respect the jury's conclusion that the bracelet was not infringed. But the only – what the district court should have done to properly exercise its discretion in determining fees was to cut our fee award, was to say Sophie and Chloe prevailed, got a judgment in its favor in a case where Brighton denied any liability whatsoever. But we only won on one out of five accused products. We should get a fifth of the fees, or a third of the fees since this earring constituted about 30 percent of their overall unit sales and their overall revenues. I think my time is up unless the court has any other questions. You have exceeded your time. Thank you, counsel. Thank you, Your Honor. Lupano? Yes. Thank you. I think that Brighton's position certainly was objectively reasonable in all respects. We turned out to be absolutely correct about ten of the copyrights being not valid because these were common shapes and designs. The 11th we turned out to be right in that the jury found no infringement. And that leaves the two Toledo copyrights, which – not Toledo, but Buddha's Kiss – which, based on our view of this – these two earrings, we concluded that this couldn't possibly infringe, particularly when one takes into account what they said to the Copyright Office comprised their design. I think if we were strolling through the bazaar – How you view it is not important, Counselor. You've got to have a legal theory, not how you view it. Well, the legal – What's my best legal theory? The legal theory is that under the extrinsic test, this could not be an infringing design. And I would say that's true. And therefore? And therefore, we should have prevailed on the Toledo earring as well. And I think that makes our – We didn't appeal that. What you appealed is the jury instructions and the motion for judgment notwithstanding the verdict, or judgment – motion for law. Yeah, motion for judgment is a matter of law. And as I view it, that does encompass this notion that under the extrinsic test, this could not be an infringing design. Well, your adversary conceded that if you're right on the charge, he couldn't prevail on a correct charge. So that sort of seems to take care of the issue of judgment as a matter of law. Yes, it would. I don't think I have anything further to add. All right. Thank you, Counsel. Thank you. Thank you to both Counsel. The case just argued is submitted for decision.
judges: Rawlinson, N.R. Smith, Korman